State v. Austin.

## THE STATE v. AUSTIN, Appellant.

### Division Two, July 2, 1904.

1. **JURY - PANEL: Selected by Unauthorized Officer: Statutory Provisions, Directory and Mandatory.** While statutory provisions respecting the drawing of the panel of jurors are regarded as directory merely, it does not follow that essential provisions of the statute can be absolutely disregarded. The very terms of the statute indicate that the Legislature intended to impress upon those to whom this important duty is assigned the necessity of surrounding the exercise of this function with certain safeguards. The drawing of the jury panel by an unauthorized officer who is not a disinterested party, is a violation of the constitutional guaranty of the right to a trial by an impartial jury, and such violation can not be sanctioned.

2. ————: ————: **Law Universal in Application.** The selection of a jury panel by an unauthorized officer can not be justified by a showing that such officer was actuated by no improper motive, nor that the jury which was selected was an unprejudiced one, nor that the offense for which defendant was tried by such jury was a heinous one. Rules of law must be universal in their application, and can not be announced to suit the seeming demands of a particular case.

3. ————: ————: **This Case.** The county clerk testified, in support of a motion to quash the panel, that the prosecuting attorney selected so many names of jurors for each township of the county; that the prosecuting attorney then wrote the names on a piece of a paper, cut the paper into strips, one name on each strip, and put the strips in a hat; that one of the county judges held the hat and the county clerk reached in and drew one name

at a time until he got the required number of jurors from each township; that the judges saw the names after they were written on the paper by the prosecuting attorney, and also saw them as they were drawn from the hat. He could not state that the judges approved them, but only that they made no objection to the names as offered by the prosecuting attorney. Neither the county judges nor the prosecuting attorney made any statement, upon the hearing of the motion, in regard to the selection of the panel. *Held*, that, upon this showing, the court should have sustained the motion to quash the panel, and its action in overruling such motion constitutes reversible error.

4. **DEFENDANTS JOINTLY INDICTED: Threats by One Not on Trial.** Where several defendants are jointly indicted for murder and a severance is granted, threats made against deceased by a defendant not on trial, can not be admitted against a defendant who is being tried, without a preliminary showing, either of the latter's presence at the time the threat was made, or of the existence of a conspiracy or common purpose on the part of both defendants to kill deceased.

5. **INSTRUCTIONS: Should Follow Evidence.** The court should instruct upon all the grades of an offense to which the evidence may be applicable. If there is any testimony tending to show a condition calculated to arouse such passion as would reduce the grade of the crime, the court should so instruct; otherwise it is not error to refuse to do so.

Appeal from Pemiscot Circuit Court.—*Hon. H. C. Riley*, Judge.

REVERSED AND REMANDED.

*Charles H. Daues* for appellant.

(1) Defendant's motion to quash the regular panel of jurors should have been sustained. The law guarantees to the defendant a trial by a jury selected in a fair and impartial manner as directed by law, and the selection of the jury by the prosecuting attorney in this case was most prejudicial to the defendant. R. S. 1899, secs. 3769 and 3770. (2) Defendant testified that deceased fired first two shots, corroborated by the fact that deceased, when found, was lying upon a rifle-gun and ex-

ploded cartridges. This warranted an instruction for murder in the second degree and for manslaughter in the fourth degree, and for acquittal. State v. McKenzie, 102 Mo. 620; State v. Cochran, 147 Mo. 519; State v. Hudspeth, 159 Mo. 178.

*Edward C. Crow,* Attorney-General, and *Sam B. Jeffries,* Assistant Attorney-General, for the State.

(1) The decisions of our courts hold that although the jury may not be selected in the manner required by sections 3769 and 3770, Revised Statutes 1899, such variation in the manner of the selection is no ground for reversal unless some substantial injury or injustice be done the complaining party. State v. Griffin, 87 Mo. 607; State v. Knight, 61 Mo. 373; State v. Pitts, 58 Mo. 556. The decisions of this court seem to conform to the weight of authority in this country, and that is, that where the plain terms of the statute with reference to the selection of a jury have not been strictly followed, and where no real and substantial harm results to the complaining party, a new trial will not be granted because of the failure of the trial court to sustain the motion to quash the panel on that ground. It has, however, been held in a number of cases, and properly so, that where it appears or may be reasonably inferred from the circumstances that the complaining party has been injured by reason of the panel being selected differently from the manner required by statute, it will be discharged upon motion. People v. Wilhelm, 72 Ill. 468; State v. Ryan, 70 Ia. 155; State v. McKahill, 72 Ill. 111; State v. Matthews, 88 Mo. 121. If the action of the prosecuting attorney in selecting the names from which the jurors were to be selected by the county court is prejudicial to the interests of the defendant, or if it be reasonably apparent that the conduct of the prosecuting attorney is prejudicial or harmful to the interests of the defendant, the court should have sustained the mo-

tion to quash the panel,· and it should, therefore, have been discharged.   The evidence of these jurors upon their *voir dire* discloses that all who were left on the jury by the trial court were competent jurors and in no wise prejudiced against the defendant.  No further objection was made to the jurors that were selected and allowed to remain on the panel.   (2)  It does not always follow that because evidence may warrant an instruction on self-defense, there must necessarily be one on some lower grade of homicide than murder in the first degree. · State v. Sneed, 95 Mo. 553; State v. Blunt, 91 Mo. 503; State v. Collins, 81 Mo. 652; State v. Wilson, 86 Mo. 520; State v. Kilgore, 70 Mo. 559.

FOX, J.—This prosecution is based upon an information filed in the circuit court of Pemiscot county, Missouri, on the twenty-fourth day of November, 1902, and is verified and supported by the affidavit of L. L. Collins, prosecuting attorney of said county.

The information charges this defendant, Charles Austin, together with George Spacey, Dug Brewer, Fate Austin, Dave Austin and Arthur Austin, with the murder, in the first degree, of one Mrs. Carrie Johnston, who lived with her husband and child on a small tract of land adjoining the land occupied by the Austins.

A severance was granted this defendant and he was placed on trial at the June adjourned term, 1903, of said court; upon arraignment defendant entered a plea of "not guilty."

A motion to quash the regular panel of petit jurors, on the ground that the jury was illegally selected. by the prosecuting attorney and not by the county court, as required by law, was interposed by the defendant, but was overruled by the court; the facts set out in the motion were supported by the testimony of Ben M. Tinsley, the county clerk, at the term at which the jury was selected.   The court ordered the trial proceeded

with, which resulted in a conviction of the defendant of murder of the first degree, from which the present appeal is prosecuted.

Upon the trial the proof substantially tends to prove that: The deceased, Carrie Johnston, lived with her husband and an eight or nine-year-old daughter about one-half mile south from Kennedy's Switch in Pemiscot county. The house in which they lived was situated upon a tract of land the Austin brothers had leased, and Johnston and wife were living there by the sufferance of the parties who leased to Austin. Johnston was working for the Caruthersville Heading Company. He left home on the twenty-first of November, 1902, about seven o'clock. The shooting occurred between eight and nine o'clock of the same morning. On the day before the shooting some of the persons charged with the commission of the crime went to the premises occupied by Johnston and his wife for the purpose of removing a fence, over which the Austins claimed control. They were, however, prevented in this by the deceased, she driving them away at the point of a gun. The following morning, each of the defendants armed themselves with rifles and revolvers and proceeded to the scene of the homicide. They commenced removing the fence, which was some distance from the house, when the deceased's daughter called her attention to the fact that the defendants were on the premises. The deceased secured her husband's rifle, which was loaded and started in the direction of the defendants. There is little evidence as to what occurred except that soon after the deceased left her house the firing commenced and was continued at short intervals until all guns and revolvers had been emptied. The deceased's daughter testified that the Austin boys and parties who were with them, which included all of the defendants, fired the first shots; that her mother carried the rifle with her, but did not raise it in a firing attitude, and as soon as defendants commenced to fire deceased turned and started

towards the house; that while she was thus retreating, she was shot in the back, the bullet passing through the body and out at the front of the right arm.   When found, the rifle which she carried from the house was lying underneath her.  The deceased's husband testified to hearing the shooting and that several volleys had been fired before he recognized the sound of his own gun.  This statement is, however, denied by witness Glover, who stated that as soon as the shooting commenced the prosecuting witness Johnston remarked that those shots were from his gun.  The defendant was placed upon the witness stand and the only question of importance asked him was, "Who shot first?"   His reply to this was that the deceased shot first and that she fired two times.  There were a number of shots fired, some of the witnesses estimating the number at fifteen or twenty, some forty or fifty.   Immediately after the shooting defendant left the scene of the homicide and went to Stewart's Landing on the river, where he was arrested, while attempting to go aboard a steamboat.

The Attorney-General, with commendable frankness, concedes that the statement by appellant as to the testimony of the county clerk, in support of the motion to quash the panel of jurors, was substantially correct.  It is as follows:  "My name is Ben M. Tinsley and was the clerk of the county court of Pemiscot county, Missouri, at the time this jury was selected, which was selected as follows:  The prosecuting attorney, Mr. Collins, selected so many names for each township; he, Collins, wrote them down on a piece of paper and cut it into strips, one name on each strip, and put them in a hat; Judge McDonald sat on the other side of the table and held the hat and I reached in and drew one name at the time until I got the number of jurors from that particular township they were drawing from—that is the way the panel was selected.  I can not say that the court approved the names selected by the prose-

cuting attorney but only that the court made no objections to the names presented.''

On cross-examination, Mr. Tinsley stated that the county judges, when they got ready to select the jury, called on Collins; but he did not remember what was said. He further stated that the judges saw the names after they were put down on a paper by the prosecuting attorney and saw the names as they were drawn from the hat. He would not state that they approved them; but they made no objections to the names as presented by the prosecuting attorney. Neither the prosecuting attorney nor the county judges made any statement upon the hearing of the motion, in respect to the selection of the panel of jurors. This is a sufficient recital from the disclosures of the record to determine the legal propositions involved.

## OPINION.

Numerous erorrs are assigned in the disposition of this case by the trial court; however, from a careful examination of the record, we find that the most serious proposition confronting us is in respect to the manner of selecting the jury, and the action of the court in overruling appellant's motion to quash the panel of jurors, which had been certified to the clerk of the circuit court by the clerk of the county court, as being the panel of petit jurors selected by the county court for the June term, 1903, of the circuit court of Pemiscot county, at which term the cause was tried. Our conclusion that this is the important question in the cause, is emphasized by the frank admission of the Attorney-General, in his able presentation of the question, wherein he says: ''In our opinion, this is the most serious proposition in the case, and if the action of the prosecuting attorney in selecting the names from which the jurors were to be selected by the county court is prejudicial to the interests of the defendant, or if it be rea-

sonably apparent that the conduct of the prosecuting attorney is prejudicial or harmful to the interests of the defendant, the court should have sustained the motion to quash the panel, and it should, therefore, have been discharged.''

The panel of jurors purporting to be selected by the county court was in attendance upon court at the time this cause was set for trial. Before proceeding to trial, the defendant filed his motion to quash the panel of jurors, for the reason that they were selected by L. L. Collins, prosecuting attorney of said county, and not selected and drawn in the manner provided by statute. There was only one witness who testified upon the allegations in the motion; that was Mr. Tinsley, county clerk, who was present at the time of the selection of the jury. His testimony shows, beyond question, that the names of all the persons (with the exception of a few instances), from the various townships, placed in the hat from which the panel was to be drawn, were submitted and their names placed on slips to be drawn out by the clerk, by L. L. Collins, prosecuting attorney of said county, and the representative of the State in this cause. There are no counter-affidavits, or any testimony of any kind explanatory of the manner of selecting the panel, as stated by the clerk of the county court. No testimony indicating that the prosecuting officer was simply making suggestions as to the names of suitable persons from which the panel was to be selected. No conversation is related as occurring between the judges of the county court and Mr. Collins, at the time the jurors were selected. Hence, we are left to determine from the testimony of the county clerk alone as to the manner of selecting the panel of jurors, and whether or not the challenge to the panel should be sustained on the ground that the method of selection was in violation of the statute.

Sections 3769 and 3770, Revised Statutes 1899,

designate the method of selecting the jurors. They provide:

"Section 3769. The county court of each county, at a term thereof not less than thirty days before the commencement of the circuit court, or other court having civil and criminal jurisdiction, or civil or criminal jurisdiction, shall select names of not less than one hundred persons having all requisite qualifications of jurors; and the court in selecting such names, shall select, as near as practicable, the same number from each township in the county, according to their relative population, and shall determine how many grand jurors and how many petit jurors shall be selected from each township in said county; and the names of such persons and the township from which they are selected shall be written on separate slips of paper, of the same size and kind, and all the names so selected from any one township shall be placed in a box with a sliding lid, to be provided for that purpose, and thoroughly mixed.

"Sec. 3770. The clerk of the county court, so situated as to be unable to see the names on such slips, shall, in the presence of said court, proceed to draw out names separately and singly from one township, until he gets the number of names required from such township for grand jurors, and from the remaining names in the box shall, in the same manner, proceed to draw out names separately and singly until he gets the requisite number of names required from such township for petit jurors; and in the same manner shall continue to draw names from each of the remaining townships, separately and singly, until he shall have drawn the names of twelve persons, who shall serve as grand jurors of the county at the next term of the court for which said jury is drawn; and in the same manner draw the names of twenty-four persons, who shall serve as petit jurors at the next ensuing term of said court for which said petit jurors are drawn. . . . ."

The duty imposed upon the county court by the

statute is not a trivial and unimportant one. The selection of the body of men from whom is selected those who are to pass upon, not only the property rights, but the life and liberty of the citizen, is confided to the county court, and is certainly a grave and important duty resting upon that body.

While statutory provisions respecting the drawing of the panel of jurors are regarded as directory, it by no means follows that the essential provisions of the statute can be absolutely disregarded. The testimony of the county clerk, upon the motion to quash this panel, established, beyond any cavil, that the prosecuting attorney, with the exception of two or three instances, selected and placed on the slip the names of all the jurors drawn on this panel. Is this to be treated as a mere irregularity, or is it violative of not only the letter, but also of the spirit of the statute providing the manner of selecting jurors? If this method of selecting jurors can be maintained, then we confess that the statute is meaningless, and absolutely without force and vitality.

This court has gone a long way upon this subject, holding uniformly the provisions of the statute, respecting the empaneling of jurors, as merely directory, and the proposition now confronting us is, will we make the further long and dangerous step, and say that the statute confiding to the county court the selection of jurors means nothing and that the functions resting upon it alone may be delegated to one of the counsel in causes to be tried by jurors so selected? We do not believe that the county court or Mr. Collins intended otherwise than the selection of fair and suitable persons upon the panel of jurors drawn; but that does not meet the difficulty. We are called upon to either sanction, or refuse to do so, the selection of a panel of jurors in a manner clearly in violation of the statute. If this can be approved, then in the event the county court fails to select a panel and the circuit court orders one to be summoned by the sheriff, as provided by statute, upon the

same principle the prosecuting officer could give the sheriff the names of the persons to be summoned, in obedience to such order. It furnishes no answer to the complaint made in this case that the jurors selected, and those who finally tried the case, are not shown to have been prejudiced against the defendant, or in any way disqualified from trying the cause. The husband of the deceased may have summoned the jury, and still the defendant would be unable to make any showing of the disfavor of the jurors toward him. Yet would it be insisted that the court would refuse to quash the panel unless it appeared there was some prejudice to the rights of the defendant? We think not. An officer to whom no duty of selecting the panel of jurors is confided, and one who represents the State in the prosecution of the cause, has no right to select and name the panel of jurors under the statute herein quoted, and his selection and naming of the panel can not be treated as a mere irregularity. The very terms of the statute indicate that the Legislature intended to impress upon those to whom this important duty was assigned, the importance of surrounding the exercise of this function, in selecting a panel of jurors, with certain safeguards.

The very first utterance of the lawmaking power is that: "The clerk of the county court shall be so situated as to be unable to see the names on the slips to be drawn by such clerk." Now, while it may be said that this command of the statute is merely directory, and it is true that if the clerk was situated so as to see the slips upon which the names were written, that would not subject the panel to challenge, it serves to indicate that the Legislature was impressed with the great importance of the duty of selecting jurors. The clerk presumably is an absolutely disinterested party, and for that reason his conduct should not be subjected to the same strict scrutiny as one who is interested. That is not this case. Here we have before us a challenge to a panel of jurors named by an officer, who was not only

without authority to name them or participate in doing so, but who, by virtue of his office, was an attorney in the cause which the panel of jurors, or at least some of them, might be called upon to try. Unless we are willing to strike down every safeguard surrounding the selection and empaneling of jurors, the manner of selecting this panel, assailed by the defendant, can not be sanctioned, and this we can not give our consent to do.

While no improper motive actuated the prosecuting attorney in his participation in the selection of this panel of jurors, still common fairness, and the constitutional guaranty of the right to trial by an impartial jury, should clearly prohibit him from doing so. It might be added that the State is as deeply interested in maintaining the rule herein announced as defendants are. The next case may present the reverse of this proposition; the State might challenge the panel for the reason that defendant's counsel selected or participated in the selection of the panel of jurors before whom he was to be tried. The conclusion reached upon this highly important question is not in conflict with the numerous cases announcing the rule that the provisions of the statute respecting the empaneling of jurors are directory merely; but the reverse is true, the principle upon which the conclusion is based finds support by the text-writers, as well as in the well-considered adjudications on the subject.

Thompson on Trials, vol. 1, sec. 33, clearly announces the general rule and the exceptions. He says: "As already seen, statutes which prescribe the manner of selecting, by county, town, or other officers, the general list of persons liable to jury duty from which the panel is drawn, are generally treated as directory merely. It is hence a general rule that irregularities in the discharge of this duty constitute no ground for challenging an array. If the jurors who have been selected and drawn are individually qualified, that is generally deemed sufficient, and objections to particular

jurors are made by challenge to the polls. It has been so held in case of a delay in returning the list to the clerk of the court, and of informalities of the certificate of selection; though a total failure to record the list, so as to allow the public inspection of it, has been held a ground of such challenge, and so has a total departure from the provisions of the law. That the selection was not made by the officer appointed by the statute, or that it was made by an officer who had never qualified, or by persons to whom the proper officers assumed to delegate their functions, will support such a challenge.''

In State v. Newhouse, 29 La. Ann. 824, the Supreme Court of Louisiana was treating a statute similar to ours, in respect to selecting jurors; the only difference being, the duty of selecting rested upon commissioners instead of the county court; the principle involved is the same. The learned judge in that case very forcibly expressed the views of the court upon this subject. He said: ''Before proceeding to trial the accused challenged the array of petit jurors, and moved to quash and set aside the venire, on various grounds, among which were these: First. That the names from which the venire was drawn and out of which the petit jury was composed, were not selected by the jury commissioners, but that a list of over two hundred names was furnished by one Lionel Adams to said commissioners, and said names were put into the wheel from which said venire was drawn. Second. That in the said wheel at the time said venire was drawn, there were names of persons selected by James Lewis and Smallwood as jury commissioners, at a time when said Lewis was not a jury commissioner, he having months before resigned said office and accepted that of police commissioner, both offices being of trust and profit. Both of these objections were, we think, clearly shown to be true in point of fact. It seems that the commissioners to lighten their labors asked Adams to furnish them a list of two or three hun-

dred names for the jury wheel, which he did. The commissioners in their testimony state that they looked over and approved this list after Adams prepared it. The district judge was of opinion that this was a substantial compliance with the statute and that the commissioners, by approving, made the list their own selection. We do not think so. To so hold would be equivalent to affirming that the commissioners could act by proxy or deputy in the performance of their very important and grave duties. Nothing in the statute justifies such an inference. Much less could their functions be performed by a person like Mr. Adams, who was, as it were, a mere bystander, under none of the obligations of an officer, or even of an agent or proxy. It is manifest that there would and could be no security for the accused against packed juries, if they be selected in this loose way. The intent of the law was that two responsible and competent men should, under the appointment of the Governor and under the sanction of an oath, select from all the voters of the parish a list of persons to serve as jurors; that they should inspect and select from the names of all the voters, and not simply inspect and approve what might be 'a cut and dried' list of two or three hundred names. Such a system is too liable to abuse to be tolerated or sanctioned by courts charged with the lives and liberties of the citizen.''

In State v. Jenkins, 32 Kan. 477, the rule is thus clearly stated:

''We think the better rule, and one most likely to do justice, is, that while mere irregularities in the drawing of jurors, or mere informalities on the part of the officers charged with the drawing, ought not to be a sufficient ground for sustaining a challenge to an array, yet it is otherwise where the essential provisions of the statute have been palpably disregarded. [State v. Yordi, 30 Kan. 221; Thompson & Merriam on Juries, sec. 143.] . . . The Legislature in this State has said that certain persons shall be selected as jurors;

the officers required to make the list in this case have
said other persons shall be returned as jurors. There-
fore, there was a substantial departure from the stat-
utory mode in making the list of persons to serve as
jurors for 1883. This disregard of the statute can not
be allowed. The requirements of the statute as to the
making of a list of persons to serve as jurors, and the
selection of the panel therefrom, are in the nature of a
privilege to the accused, and he has the right to insist
that there shall be a substantial compliance with the
law.''

In United States v. Coit, 25 Fed. Cases, No. 14829,
the point arose upon a motion to quash a panel of jurors
returned by the marshal of the district court. There
was an act of Congress which directed that jurors
should be returned from such part of the district as the
court should direct, as should be most favorable to an
impartial trial, and to avoid unnecessary expense or un-
duly burthening the citizens of any part of the district
with such services; and that they should be designated
in each district respectively, according to the mode of
furnishing juries to serve in the highest courts of law
therein, so far as such mode should be practicable.
Notwithstanding this act of Congress, the marshal used
his own pleasure in the selection of the jury; hence
the challenge to the panel. The principle discussed
and conclusion reached by the learned judge in that
case may be applied to the case at bar; it is thus
stated by the reporter: ''The question was very fully
argued by the counsel on both sides; and VAN NESS,
district judge, having taken time to consider of it,
delivered his opinion in favor of the challenge, upon
both points. The array was accordingly quashed and
the jury discharged. The judge has reduced his opin-
ion to writing. It was very ably drawn up, and the
subject examined and discussed with remarkable clear-
ness, precision and force. He showed, not only from
the acts of Congress particularly applicable to this

subject, but from a view of the whole judiciary system of the United States, that it was the intention of Congress to conform the proceedings of the United States courts as nearly as possible to those of individual States respectively. By this decision, the valuable right of an impartial trial by jury, than which none is of more vital importance to the administration of justice, is secured to the citizens of this State in the district court, whose rights are no longer left to depend upon the will of an individual, but on the due execution of those laws, which, calculated to guard against abuse and oppression, have provided in our State courts for the selection of juries by ballot from all those who are qualified to serve. It is proper here to add, in order to avoid mistake, that the counsel for the defendant did not impute to the marshal any improper conduct or design in summoning the jury in question, nor did the challenge involve any objections to the individuals composing the jury: It proceeded wholly upon the ground that the mode by which the jury had been summoned and returned was wrong in principle, and that the practice which had hitherto prevailed was in violation of express and positive laws, whose strict observance was a matter in which even the humblest individual in the community had a deep interest.''

This court in State v. Weeden, 133 Mo. 70, indicates, in no doubtful terms, its views upon the question as to the summoning of a jury by an impartial officer. BURGESS, J., speaking for the court, said: ''The next objection is that the court assumed the province of the elisor, appointed by it for the special purpose of summoning a jury to try this case, by calling as jurors the regular panel which had theretofore been summoned by the sheriff, including eight additional jurors who had been summoned by said sheriff, during the term, to serve in the places of other persons who had been summoned, and failed to appear, were not found, or excused from service by the court. The record shows that when

the case was called for trial, the court, over the objection and protest of defendant, ordered the regular panel of jurors in the jury box, including the eight additional jurors, summoned by said sheriff during the term, none of whom, so far as appears, were ever summoned by the elisor, and that after thirty men, including said eight, had qualified, defendant made his challenge to the array, which was overruled by the court. The ground upon which the sheriff was disqualified was that he and his deputies were prejudiced against the defendant, one of his deputies a witness in the case, and would not summon an impartial jury to try his cause. Under the circumstances it seems somewhat strange that the court itself should call into the jury box jurors who were known to have been summoned by an officer whom it had held to be disqualified, and whom it must have known were summoned by that officer, and had not been summoned by the elisor. The fact that the regular panel had been summoned by the sheriff was no barrier to any or all of them being summoned for this particular case by the elisor, and had this course been pursued the fact that they had previously been summoned by the sheriff would have been no valid ground of objection to them. [State v. Wiley, 109 Mo. 439.] But in calling them into the jury box, the court deprived defendant of any supposed benefit that he had the right to expect at the hands of a jury summoned by an impartial officer.''

From the foregoing expressions of this court, it is apparent that a jury selected by an unauthorized officer will not be sanctioned, and it will be noted in that case that this court did not make the duty of the trial court, in sustaining the challenge to the array, depend upon any sort of showing that the jury were prejudiced; but simply based it upon the principle that the jury had not been summoned by an impartial officer. The panel of jurors purporting to have been selected and drawn by the county court, it is true, were summoned by the sheriff in accordance with the statute; this, however, does

not change the application of the rule, for the sheriff simply notified the jurors that had been previously improperly selected by the prosecuting attorney.

The conclusion herein reached finds support, upon principle, in numerous cases in other jurisdictions. [Elkins v. State, 1 Tex. App. 539; State v. Vance, 31 La. Ann. 398; Brazier v. State, 44 Ala. 387; State v. Shackelford, 2 Tex. App. 385.]

It may be said that this was a heinous offense, and that this rule ought not to be applied to this case. This furnishes no answer for the settlement of legal propositions. It is true this is a serious case; but it must be remembered that rules of law or of practice should not be announced to suit the seeming demands of a particular case; the law should be universal in its application, it must be applied to this defendant the same as to others against whom the facts are not so pointed and injurious. Principles of law and rules of practice, announced by appellate courts, are not designed simply for a day, or for the circumstances of some particular case; but are to be applied to all cases which may arise, in which the principle is involved. The motion to quash the panel of jurors should have been sustained, and the action of the court in overruling it was error.

In our examination of the record in this case, we find that witness Herb Johnston, on the part of the State, testified to certain threats made by Fate Austin, a brother of the defendant on trial. This testimony was objected to by defendant's counsel and the objection overruled, and exception was duly preserved. The record discloses a severance in the trial of the defendants; hence, defendant Fate Austin was not on trial with this defendant, and the testimony was apparently admitted against defendant Charles Austin. It was not disclosed by the record that the defendant Charles Austin was present at the time his brother Fate Austin had the conversation with witness, and up to that time, which was about the first of November, there is no testimony show-

ing a conspiracy, or a common purpose, on the part of the defendant and his brother, to kill Mrs. Johnston; hence, this testimony is inadmissible without a preliminary showing, either of his presence at the time of the making of the threat, or a prima facie showing of the existence of a conspiracy or a common purpose on the part of this defendant and his brother Fate, who made the threats, to kill the deceased.

Upon the subject of the grades of the offense to which the instructions of the court should be directed, it is only necessary to say that, upon the retrial of this case, the court should instruct upon all the grades of the offense to which the evidence may be applicable. The evidence must be the guide of the court in its instructions to the jury; if there is any testimony tending to show a condition surrounding the defendant at the time of the homicide that was calculated to arouse such passion as would reduce the grade of crime, then the court should so instruct; otherwise it is not error to refuse to do so.

Entertaining the views as herein expressed, the judgment of the trial court is reversed and the cause remanded. All concur.