THE STATE v. C. D. ROUNER, Appellant.—64 S. W. (2d) 916.

Division Two, October 28, 1933.

Robert L. Lamar, C. R. Hayes and Barton & Moberly for appellant.

*Roy McKittrick,* Attorney-General, and *Wm. W. Barnes,* Assistant Attorney-General, for respondent.

FITZSIMMONS, C.—Appellant was found guilty in the Circuit Court of Texas County of selling moonshine whiskey, and his punishment was assessed at four years' imprisonment in State prison. From the sentence and judgment he appeals.

Harry Kelly, sheriff of Texas County, was the sole witness for the State. He testified that on and prior to September 1, 1931, appellant Rouner operated an oil filling station and tourist camp called Piney Vu Lodge on Highway 17, about three miles west of Houston, the Texas county seat. After dark on the evening of September 1, 1931, Sheriff Kelly and Frank Jarrett and J. C. Finney stopped their automobile at Rouner's place. The auto was loaded with cooking utensils, bedding and other camping equipment to give color to the statements of Jarrett and Finney that they were campers. Sheriff Kelly lay in the tonneau of the car, concealed by bed quilts. Jarrett called Rouner out to the car. After Rouner had inquired where they had been and what they had in the back of the car to which question Jarrett gave disarming and deceptive answers, Jarrett asked Rouner for a pint of whiskey. Rouner returned to the house and brought back to the car a pint containing liquid which Sheriff Kelly testified was moonshine whiskey, and which Rouner sold and delivered to Jarrett for $1.50. Kelly and his party then drove away, and Kelly appropriated the bottle of liquor which he kept until the day of the trial. No steps were taken to prosecute Rouner until January, 1932. Appellant's defense was that on September 1, 1931, and for a day before and after that date, he was acting as guide in charge of a fishing party on a float on the Piney River; that he was not at Piney Vu on the day on which the offense was laid, and that he did not sell liquor as charged. A new trial was sought on several grounds, most of which have to do with what appellant regards as the pernicious activity of Sheriff Kelly. But the most serious question raised concerns the selection of the regular petit jury panel for the June Term, 1932, of the Texas County Circuit Court. The jury which found appellant guilty and fixed his punishment was chosen from this panel.

I. Appellant, in his motion for a new trial, alleged that he and his counsel learned for the first time after the trial and verdict that the regular panel of jurors from which was chosen the jury before whom appellant was tried, had been selected by the judges of the county court in a private session in a secret, closed room, in the absence of the county clerk, who did not draw the names of jurors in public in the presence of the court and in open court as required by Section 8755, Revised Statutes 1929. Appellant's motion also charged that the county court in choosing the jury acted arbitrarily in the selection of the regular panel and received suggestions of names from Sheriff Kelly and Prosecuting Attorney Lay. The testimony taken at the hearing upon the motion did not support the charge of participation of the sheriff and prosecutor in the selection of the panel.

Appellant, to sustain his motion for a new trial upon the ground that the panel of jurors was not chosen according to law, called as witnesses Mrs. Rose Martin, county clerk of Texas County, Charles Gentry and Kirby Smith, deputy county clerks, Judge A. L. Coates and Presiding Judge John S. Stites, both of the Texas County Court. The testimony of all these witnesses was to the effect that, when it came time, on a certain afternoon appointed by Presiding Judge Stites to select the regular panel of jurors, Judges Stites and Coates retired from the county courtroom in the Texas County courthouse to a private room ten feet square in the same building just off the county clerk's office. Judge Williams, the third member of the county court, was excused to attend a funeral. Judges Stites and Coates closed the door of the private room and worked undisturbed at the task of selecting the panel. When they had finished they returned to the courtroom, and Judge Stites handed a list of names to Charles Gentry with the statement that it was the petit jury for the June Term of court. Gentry gave the list to Kirby Smith and he in turn gave it to Mrs. Martin, the county clerk.

The two county judges testified that each one of the three judges prepared a list of about 150 names, and that these lists were on hand when Judges Stites and Coates assembled in the private room to select the jury panel. They also testified that Judge Stites wrote on a separate slip of paper each name on the three lists. These slips were grouped by townships and were placed in a box, one township at a time, and the names of jurors and alternates to the number commonly allotted to each township were drawn out by Presiding Judge Stites and were written on the list of the panel. When the requisite number of jurors and alternates for a particular township had been thus selected, Judge Stites emptied the box of the remaining name slips, placed in the box the names from the next township in alphabetical order, drew the requisite number of jurors and alternates for that township, and he thus proceeded until the proper number of jurors and alternates from each of the seventeen townships had been chosen. Judge Stites testified that when the slips from each township had served their purpose, he placed them in his pocket. He also testified that he used as a jury box an empty carton or paper box in which books had been shipped and which he found lying in the corner of the private consultation room. In the process of picking slips Judge Stites kept the box on the floor beside him. He admitted that he could have looked into the box and could have seen the names on the slips, but he knew the law was that he should not see what he got out and so he did not know any name drawn until he had placed the slip on the table before him. Judge Stites explained that since the old courthouse had been burned and the new one built, the county court had been without a jury box. The county clerk's forces confirmed this, Mr. Smith testifying that two jury

boxes, formerly used in the old courthouse, were in the memorial building, some distance from the new courthouse. Mrs. Martin, the clerk, and Messrs. Smith and Gentry, her subordinates, all testified that they did not see a box of any kind in the consultation room either before or after the jury panel had been chosen and that after the panel had been prepared they did not see in that room a list of 400 eligible names nor any slips of paper on which these names had been written. All witnesses, namely the two county judges, the county clerk and her two subordinates agreed that Mrs. Martin, the county clerk, was not present at the drawing and took no part in it. The statutes governing the selection of jury panels in Texas County at the time in question are Section 8754 and 8755, Revised Statutes 1929. These sections are as follows:

"Sec. 8754.—The county court of each county at a term thereof not less than thirty days before the commencement of the circuit court or other court having civil and criminal jurisdiction, or civil or criminal jurisdiction, shall select names of not less than four hundred persons having all requisite qualifications of jurors; and the court in selecting such names shall select, as near as practicable, the same number from each township in the county according to the relative population, and shall determine how many petit jurors and alternate petit jurors shall be selected from each township in said county and the names of such persons and the township from which they are selected shall be written on separate slips of paper of the same size and kind and all the names so selected from any one township shall be placed in a box with a sliding lid to be provided for that purpose and thoroughly mixed."

"Sec. 8755.—The clerk of the county court so situated as to be unable to see the names on such slips shall, publicly, in the presence of said court and in open court, proceed to draw out names separately and singly from one township until he gets the number of names required from such township for petit jurors and an equal number as alternate jurors to serve on petit juries if summoned; and in the same manner shall continue to draw names from each of the remaining townships, separately and singly, until he shall have drawn the names of twenty-four persons who shall serve as petit jurors at the next ensuing term of said court for which said petit jurors are drawn, and the names of twenty-four persons to be designated as alternate petit jurors, the names of said alternate petit jurors to be recorded and numbered consecutively from one to twenty-four inclusive, in the order in which they are drawn: *Provided,* that in all cases where the county court shall fail to select such jurors and alternates according to the provisions of articles 1 and 3 of this chapter the sheriff of the county shall summon such petit jurors from the several townships in the county, according to their respective populations, as nearly as may be, and not less than ten days

before the first day of the term of the court for which such jurors are summoned; and the sheriff when ordered by the court demanding such jury shall summon petit jurors during such term from the by-standers, after the list of alternate petit jurors has been exhausted; *and provided further,* that no person shall be summoned as such standing juror twice within the period of one year in any court of record.''

■ It is very clear from the undisputed testimony of the county judges, the county clerk and her deputies that the county clerk did not publicly in the presence of the county court and in open court draw out of the jury box the names of jurors for the panel for the June Term, 1932, of the Texas County Court. These duties, the statute (Sec. 8755) says the county clerk shall perform. It is equally clear that two of the county judges placed 400 names in a box and that one of those judges, not publicly and in open court but in the privacy of a closed room, drew from the box the necessary number of names to make up the panel of jurors and alternates. It is patent that the two county judges by this course of conduct acted contrary to the statute. Two questions arise: First, appellant having been tried before a jury of men chosen from that panel, and having been found guilty, were his rights prejudiced? Second,—if his rights were prejudiced, is he entitled to a reversal of judgment, he not having taken exception to the method of selection of the jury panel until he filed a verified motion for a new trial, and he having adduced proof at the hearing upon the motion in support of his allegation that he did not receive knowledge of the unlawful conduct of the county judges until after verdict?

■ A goodly number of cases over a long space of years rule that the statutes under review (Secs. 8754-8755, R. S. 1929) and other statutes relating to jurors are directory only and that this court will not interfere unless some prejudice to the defendant from a lack of compliance with the provisions of the statute may be inferable from the circumstances. We will examine some of those cases presently. But we may say now that none of them presented a statutory departure such as we have here.

First let us draw some light from the origin and history of the statute. Present Sections 8754 and 8755 were Sections 2 and 3 of ''An Act to provide for the manner of selecting and summoning grand and petit jurors for certain courts of record,'' approved March 28, 1874, page 96. Prior to that enactment the law placed the whole matter of the selection of juries in the hands of sheriffs by the provisions of Section 19, Chapter 80, Juries, Missouri Statutes of 1870 (Wagner): ''All courts in which juries may be required for the trial of any cause, may order the sheriff or other officer to summon a sufficient number of jurors, as occasion may require.'' The evils of this uncontrolled system are not hard to infer. Section 3 of the Act

of 1874, the genesis of present Section 8755, provided that "The Clerk of the County Court, . . . shall, in the presence of said court, proceed to draw out names separately and singly," etc. These words of the statute remained unchanged from 1874 to 1919, although in the intervening years sections of the jury act were amended several times by the process of repeal and reenactment. But in 1919 (Laws 1919, p. 418, Sec. 6616, R. S. 1919) present Section 8755 was amended by the addition of the words "publicly," "and in open court," so that the opening clauses of the section became and are: "The clerk of the county court so situated as to be unable to see the names on such slips shall, *publicly*, in the presence of said court *and in open court* proceed to draw out names separately and singly," etc. It is obvious that the General Assembly by this Amendment of 1919 sought to correct evils and to stop loose practices which grew and flourished behind closed doors. Now for some of the cases which hold these statutes to be directory.

In State v. Pitts, 58 Mo. 556, l. c. 557, the court said:

"There was no error in overruling the motion of defendant to have the jury impaneled from the regular panel of jurors, which had been summoned for the term under the provisions of the act concerning jurors. [Sess. Acts, 1873, p. 46.] A portion of the regular panel were then sitting as a jury in the trial of another cause, and it was perfectly competent after exhausting the remainder of the regular panel, for the court to order the jury to be completed from the by-standers, under the terms of section six of the act referred to. And it was a matter of no moment, that the regular panel for the term was not selected by the county court at least thirty days prior to the commencement of the term at which the prisoner was tried, in accordance with the above mentioned act. That act can only be regarded as merely directory. To rule that it is mandatory, would be to hold, that, if by any accident the county court should not meet and select jurors in the time and manner provided by the act, the wheels of justice would have to stand still, and the circuit court be prevented from transacting its duties respecting crimes and criminals, simply because the county court failed to discharge its duty. No such ruling will be made."

The ruling of the court that the statute is directory is limited by the facts of the case to the selection of the panel at least thirty days prior to the commencement of the term. Within this scope the opinion is in accord with well known principles of statutory construction. [36 Cyc. 1157-8.]

In State v. Breen, 59 Mo. 413, defendant sought a new trial upon the ground that three of the jurors who tried him were not on the list of jurors furnished to the marshal by the jury commissioner for the St. Louis Criminal Court. This court in affirming the judgment said: "The general rule which seems to have been adopted

in the different States of the Union is, that the mistakes or informality of the officers charged with summoning, returning, selecting and impaneling the jury, will be no ground for a new trial, unless there has been fraud or collusion, or material injury to the defendant. [3 Whart. Cr. L., sec. 216.]'' It can hardly be said in the instant case that the method of the selection by the county judges of the jury panel was a mistake or informality. Another factor in the Breen case was that, by a stipulation filed in lieu of a transcript, counsel for the defendant admitted that the evidence was sufficient to justify the jury in finding defendant guilty. In view of this stipulation, the Supreme Court said: ''We would hardly be authorized to say . . . that the defendant had been injured by the verdict.'' Naively said, but not pertinent to this case.

In State v. Riddle, 179 Mo. 287, 78 S. W. 606, the trial court overruled defendant's motion to quash the array. The ground of the motion was that the sheriff and his deputies who summoned the jurors had not first been sworn as required by statute. The evidence upon the motion to quash showed that at the March Term, 1903, of the trial court, the clerk administered the prescribed oath to the sheriff and his deputies, and this court held that there had been substantial compliance with the law because the adjourned term for which the sheriff summoned a panel to try defendant was a continuance of the March Term. The court also found there was no merit to other objections to the panel, and then ruled: ''It is not claimed that the sheriff or any of his deputies were guilty of any partiality or improper conduct in summoning the jury, and, as the statutes with respect to the impaneling juries in criminal cases are directory merely, even if they are disregarded that will not be ground for a new trial, in the absence of circumstances from which it can be inferred that some prejudice resulted to defendant by reason thereof.'' [Cases cited.]

In State v. Hayes, 262 S. W. 1062, the sheriff was disqualified and the coroner was directed to subpoena jurors. In fact deputy coroners performed this service. Upon appeal the defendant contended that the statute made it the duty of the coroner himself to serve the jurors. This court conceded this construction of the applicable statute, but held that the error was not ground for reversal in the absence of circumstances from which might be inferred prejudice to the rights of defendant.

In State v. Knight, 312 Mo. 411, 278 S. W. 1036, the objection made was that in the selection of the jury six of the regular panel, although present in court, were not called. This court ruled this point against defendant for the reason that it was not preserved in the bill of exceptions. It also ruled: ''The irregularity of the officers in calling the jurors, if it can be considered such, was unintentional, and no objection whatever was made to the regular panel of twelve jurors

who tried the case. So far as the record discloses, the twelve selected to try the case were qualified and satisfactory to all parties concerned.'' The opinion also held, upon the authority of cases some of which we have examined, that present Sections 8754 and 8755 were directory only and were not ground for a new trial under the facts presented by the record.

In our opinion the variance between the facts in the typical cases cited and the facts in the instant case deprives these cases of the force of authority here, although they were rightly decided upon their own facts. In some of the cases there was substantial compliance with the applicable statute. In others it was not necessary to the decision that the statute be construed as directory. In all there is absent any prejudical causal relation between the method of selection of the jury and the verdict.

Cases more in point are State v. Austin, 183 Mo. 478, 82 S. W. 5, and State v. Weeden, 133 Mo. 70, 34 S. W. 473. In the Austin case the trial court overruled defendant's motion to quash the panel of jurors from which the trial jury subsequently was chosen. The ground of the motion, as shown by undisputed evidence, was that the prosecuting attorney submitted the great majority of the names, which were on slips and placed in a hat from which the panel was drawn. This court granted a new trial for the prejudicial error of the trial court in overruling the motion to quash. Of the duty of the county court, prescribed by Section 8754, Revised Statutes 1929, this court in the Austin case said (82 S. W. 1. c. 7):

''The duty imposed upon the county court by the statute is not a trivial and unimportant one. The selection of the body of men from whom is selected those who are to pass upon, not only the property rights, but the lives and liberty of the citizen, is confided to the county court, and is certainly a grave and important duty resting upon that body. While statutory provisions respecting the drawing of the panel of jurors are regarded as directory, it by no means follows that the essential provisions of the statute can be absolutely disregarded. The testimony of the county clerk, upon the motion to quash this panel established beyond any cavil that the prosecuting attorney, with the exception of two or three instances, selected and placed on the slip the names of all the jurors drawn on this panel. Is this to be treated as a mere irregularity, or is it violative of not only the letter, but also the spirit of the statute providing the manner of selecting jurors. If this method of selecting jurors can be maintained, then we confess that the statute is meaningless, and absolutely without force and vitality.

''This court has gone a long way upon this subject, holding uniformly the provisions of the statute respecting the impaneling of jurors as merely directory, and the proposition now confronting us is, will we make the further long and dangerous step, and say that the

statute confiding to the county court the selection of jurors means nothing, and that the functions resting upon it alone may be delegated to one of the counsel in causes to be tried by jurors so selected?" And of the duty of the county clerk, fixed by Section 8755, to draw the names of the panel, the court further said (82 S. W. l. c. 8):

"The very first utterance of the lawmaking power is 'that the clerk of the county court shall be so situated as to be unable to see the names on the slips to be drawn by such clerk.' Now, while it may be said that this command of the statute is merely directory, and it is true that if the clerk was situated so as to see the slips upon which the names were written this would not subject the panel to challenge, it serves to indicate that the Legislature was impressed with the great importance of the duty of selecting jurors. The clerk, presumably, is an absolutely disinterested party, and for that reason his conduct should not be subjected to the same strict scrutiny as one who is interested."

In principle we see no difference between the action of the county court in delegating to the prosecuting attorney its duty to make up the names to be placed in the jury box and the action of two judges of the county court in the instant case in assuming to themselves to perform in a private room the duty of the county clerk to draw the names of the jury panel from the jury box, which duty the statute says, the county clerk shall perform "publicly in the presence of the court and in open court."

In the Austin case, this court quoted from 1 Thompson on Trials (2 Ed.), section 33, page 37, the general rule, already stated, namely that irregularities and informalities are not grounds for a new trial. That author however stated an exception to the general rule thus: "That the selection was not made by the officer appointed by the statute, or that it was made by an officer who had never qualified, or by persons to whom the proper officers assumed to delegate their functions, will support such a challenge."

Many authorities support the exception stated by Thompson. A few will be mentioned. In People v. Labadie, 33 N. W. 806, it was ruled: "Under How. St. Mich., Sec. 7567, it is the duty of the clerk of the court to take the names of the jurors from the box, and it is cause for challenge to the array that the sheriff drew the names, and that the clerk only announced and made a minute of those drawn." The judgment accordingly was reversed.

In Healy v. People, 177 Ill. 306, the court ruled: "Under Section 4 of the Jury Commissions Act of 1897 relating to the method of securing juries, which provides that 'if more jurors are needed during the term the court shall so certify, and they shall be drawn and summoned' as previously specified, it is reversible error for the court, in a criminal case, against objection, to order a special

venire to be served by a special bailiff.'' And for the reason that the jury was not properly drawn, the judgment was reversed.

In Jones v. The State, 3 Ind. 37, the court said: ''If the board doing county business select, from the list of taxable persons, the names of the petit jurors, according to its discretion, instead of causing their names to be drawn from a box by the clerk, according to the statute, out of the whole number selected,—it is a good cause of challenge to the array.''

In the case of State v. Weeden, 133 Mo. 70, 34 S. W. 473, heretofore mentioned as an authority in point, the defendant disqualified the sheriff for prejudice and the trial court appointed an elisor to perform the duties of the sheriff in the case. This court in its opinion stated the facts thus (34 S. W. 1. c. 475): ''The next objection is that the court assumed the province of the elisor appointed by it for the special purpose of summoning a jury to try this case by calling as jurors the regular panel, which had theretofore been summoned by said sheriff, including eight additional jurors who had been summoned by said sheriff, during the term, to serve in the places of other persons who had been summoned and failed to appear, were not found or excused from service by the court.'' The defendant's challenge to the array was overruled, and the judgment was reversed and remanded for the error of the court in failing to sustain the challenge. It will be seen that the trial court did what the elisor was appointed to do, just as here the judges of the county court did what the statute provided that the clerk of the county court should do.

In the case of State v. Clark, 256 S. W. 554, the Springfield Court of Appeals reversed the judgment and remanded the cause upon the authority of the Austin case for the reason that the prosecuting attorney prepared a list of eligible jurors, which list the county judges used in putting names in the jury box. In the Clark case as here the defendant made his objection for the first time in his motion for a new trial in which motion he alleged that the information came to him after the trial and verdict.

County clerks are elected officials under bond for the faithful performance of their many and important duties. Because they are elected they do not hold office at the pleasure of the county court. the members of which also are elected. The General Assembly had these conditions in mind in distributing between the court and the clerk independent but successive duties in the selection of jury panels. There was a legislative purpose to throw further safeguards about the processes of the selection of jury panels, shown by the Amendment of 1919, requiring the county clerk to draw jury panels *publicly* and in *open court*. For the proper protection of the constitutional guarantees to citizens of a fair and impartial trial, both county courts and county clerks should perform their respective

duties in the selection of jury panels coordinately, without transgression of the court upon the clerk or of the clerk upon the court, and in strict compliance with the law particularly in the drawing of names by the clerk publicly and in open court. For the reasons stated we hold that prejudicial error was committed in the selection of the jury panel in the instant case.

■ II. It remains to be determined whether this prejudicial error is also reversible error, appellant not having raised the question by motion to quash, but only by a motion for a new trial. It has been ruled often by this court that an objection to the manner of selecting or summoning a jury comes too late when made for the first time in the motion for a new trial. The first expression of the rule is found in the early case of Samuels v. The State. 3 Mo. 68, decided at the December Term, 1831. One of the assignments of error was that there had not been issued a *venire facias* to the Sheriff of Boone County to summon the jury that tried the accused. This court held that whatever necessity there may have been at common law for the issuance of this writ to authorize a sheriff to call a jury was removed by Missouri Statutes enacted in 1811 and 1825. After reaching this conclusion, the court further discussed the law of juries and said: "But every objection to the sheriff, and we presume to every other officer returning a jury, must be taken before the trial commences, and cannot be taken advantage of in arrest of judgment," citing Chitty and Leach. The same rule has been stated many times since Samuels v. The State, was decided. [State v. Collins, 86 Mo. 245; State v. Jones, 61 Mo. 232; State v. Sansone, 116 Mo. 1, 22 S. W. 617; State v. Grant, 152 Mo. 57, 53 S. W. 432; State v. Page, 212 Mo. 224, 110 S. W. 1057; State v. Beedle, 180 S. W. 888.] But in each and all these cases the record showed that the defendant had knowledge of the grounds of objection before the verdict was returned or that he or his counsel had means of knowledge in the records of the trial court and of the particular cause. In the instant case appellant in his motion for a new trial alleged that he did not learn of the mode of selection of the jury panel until after verdict. He supported this allegation by affidavit, and he gave proof of it at the hearing. And this want of knowledge was reasonable and excusable in view of the manner in which the panel was drawn, not publicly and in open court but privately in a closed office.

A case in which the court considered want of knowledge is State v. Beedle, supra. After the case had been submitted, the court and jury exchanged notes about the collectability of a fine if it should be assessed. This court properly ruled such conduct to have been reversible error if an exception had been saved. Concerning the excuse of want of knowledge the court said (180 S. W. l. c. 890):

"If for any sufficient reason counsel for defendant was prevented from hearing of, or knowing of, the objectionable communications at the time they occurred, those facts in excuse for failing to except in a timely manner should have been shown by the record in some appropriate way. So far as appears both counsel and defendant were present when these matters occurred; at least, so far as the record shows it was incumbent on them both to be present. Therefore no exception having been lodged to the action of the court and jury and no excuse for failure to except being shown, we must overrule this contention."

In the case of State v. Page, supra, defendant for the first time in his motion for a new trial complained of the manner of summoning and impaneling the jury. This court in ruling against defendant upon the ground that the objection came too late, pointed out that defendant and his counsel had opportunity to learn of the service of jurors by unauthorized persons at the inception of the trial of the cause. Counsel for the defendant not only did not make any affidavit of want of knowledge or of concealment from them of information respecting the persons who summoned the jurors, but defendant, by affidavit filed, disclosed that both he and his attorneys knew before the close of the trial of the defective service. The clear inference of these two cases is that upon a showing of want of knowledge and a reasonable excuse therefor, an assignment of error otherwise too late is timely when made in the motion for a new trial.

In the leading case of State v. Ross, 29 Mo. 32, defendant assigned as ground for a new trial that one of the jurors had prejudged the case; that the answers given by him to the usual questions propounded to him were untrue, and that those facts were unknown to the defendant until after the verdict in the cause. The trial court overruled the motion for a new trial upon the ground that the statute (now Sec. 8747, R. S. 1929) precluded any inquiry into the alleged prejudgment of the case by the juror after he was sworn. The section reads: "No exception to a juror on account of his citizenship, non-residence, state or age or other legal disability shall be allowed after the jury is sworn." This court ruled that the trial court erred in holding that the phrase "other legal disability" included the undisclosed prejudice of the juror. In its opinion the court said of the timeliness of raising the objection in the motion for a new trial (State v. Ross, 29 Mo. l. c. 52):

"The policy of the statute is, doubtless, to promote the fairness and impartiality of the jury trial; and while the statutory requirements would tend to subserve this purpose, still the absence of certain requisites according to that standard in a juror is not necessarily inconsistent with an impartial trial, and these requisites a party may waive. They are such as he may inform himself of; and when no question is made before the juror is sworn, he is presumed to have

waived them. But is he presumed to waive something that in the nature of the case could not be known by the exercise of any sort of diligence? To say that the law on this subject precludes the defendant from objecting, after trial, for a cause that could not have been known before and when the objection is to be. taken, is an absurdity. If that is one of the legal disabilities, the law on the subject is a snare. No exception could be taken on this account, because no disability existed, or, which is the same thing for practical purposes, none appeared or could have been discovered.''

In the case of State v. Malone, 333 Mo. 594, 62 S. W. (2d) 909, several persons among them one of defendant's attorneys, who were in a room adjoining the room in which the jury was deliberating upon their verdict, overheard statements of certain jurors which were held to amount to misconduct. This court, in its opinion, considered the question whether defendant, by his counsel, should have sought redress in court before the verdict was returned, and whether defendant was too late in asking review of the misconduct in his motion for a new trial. This court held that, owing to the absence of the trial judge in another county at the time that defendant's counsel first had knowledge of the misconduct, defendant made timely objection in his motion for a new trial.

It would be superfluous to make further citation or argument to sustain our view that in the instant case the objection to the manner in which the jury panel was selected was timely raised in the motion for a new trial. The prejudicial error therefore is reversible.

III. Appellant assigns as error the·refusal of the trial court to give a requested instruction submitting to the jury the issue of entrapment. This instruction was properly refused. [State v. Decker, 321 Mo. 1163, 14 S. W. (2d) 617; State v. Hicks, 326 Mo. 1056, 33 S. W. (2d) 923; State v. Broaddus, 315 Mo. 1279, 289 S. W. 792.]

IV. In view of the fact that the cause is to be remanded we deem it unnecessary to examine other assignments of error. For the reasons stated in paragraphs I and II, the judgment is reversed and the cause remanded for a new trial. *Cooley* and *Westhues, CC.,* concur.

PER CURIAM:—The foregoing opinion by FITZSIMMONS, C., is adopted as the opinion of the court. All the judges concur.