FRANK PITTS, MERLE COKER, Plaintiffs, v. WILLIAM THOMAS WHITE, Defendant.

*(March* 8, 1954.)

RICHARDS, P. J., sitting.

*W. Howard Thompson* for the plaintiffs.

*Samuel R. Russell* (of Tunnell and Tunnell) for the defend-ant.

Superior Court for Sussex County, No. 357, Civil Action, 1952.

RICHARDS, P. J.:

The contention is made that the judgment rendered in favor of the defendant on May 8, 1953, is invalid, by reason of the fact that the jury by which said judgment was rendered was not drawn in the manner provided by the statute and that its proceedings were, therefore, null and void.

Rule 59(b), *Del. C. Ann.*, provides that a motion for a new trial shall be served not later than ten days after the entry of the judgment. The plaintiffs not having filed their motion in the required time did not comply with the rule. Rule 60(b) (6), however, provides that the Superior Court, may, upon motion, relieve a party from a final judgment, upon such terms as are

just, for any reason justifying relief from the operation of the judgment. The plaintiffs' motion is entitled to consideration under this rule.

Title 10, § 4508, of the *Code of* 1953, prescribes that the Jury Commissioners for Sussex County, shall 15 days before the commencement of each term of the Superior Court in said county, and at such other times as they may be directed by the Court, draw from box marked "Petit Jurors" the names of 36 persons apportioned as nearly equally as may be among the representative districts of the county, to serve as petit jurors at the ensuing term of the Superior Court in said county.

Section 4511 of the same title of the *Code* prescribes, that if either of the jury Commissioners is absent at any drawing of jurors his place shall be supplied *pro tempore*, by the Resident Associate Judge of the county in which said Commissioner resides.

On December 10, 1952, C. Donnan Holzmueller and Joseph B. Waples, Jr., the duly appointed Jury Commissioners for Sussex County, drew two jury panels from the lists of persons obtained by them to serve as petit jurors; one panel to serve as jurors at the February Term, 1953, and one panel to serve at the April Term, 1953, of the Superior Court in said county.

On said December 10, 1952, the jury panel drawn for the April Term, 1953, was delivered to the Prothonotary. On March 12, 1953, Joseph B. Waples, Jr., one of the Jury Commissioners for Sussex County, in the absence of C. Donnan Holzmueller, the other Jury Commissioner, and at a time when he was absent from the State, drew the panel of jurors for April Term, 1953, as formerly drawn by himself and the said C. Donnan Holzmueller, on December 10, 1952.

The jury which heard the plaintiffs' case on May 8, 1953, and rendered a judgment in favor of the defendant was selected from this panel.

■ There is no doubt that the general method prescribed by statute for the selection of jurors is mandatory and must be followed. The necessity for this has been held to be more urgent in criminal proceedings than in civil proceedings. 31 *Amer. Jur.* p. 611, Sec. 77.

■ There are many provisions found in such statutes, however, bearing upon the manner of selecting and summoning jurors which are generally held to be directory and not mandatory. Numerous decisions can be found to the effect that a failure to comply with the directory provision of a statute is not sufficient to void the jury panel unless it appears to be prejudicial. *State v. Brinte and Jiner,* 4 *Penn.* 551, 58 *A.* 258; *Sigerella v. State,* 1 *Boyce* 157, 74 *A.* 1081. The all important question which must always be considered, is that the jury panel must be drawn and not arbitrarily selected. *Parker v. People,* 13 *Col.* 155, 21 *P.* 1120, 4 *L. R. A.* 803; *Daugherty v. State,* 59 *Ga. App.* 898, 2 *S. E.* 2d 519; *Green v. State,* 59 *Md.* 123, 43 *Am. Rep.* 542; *State v. Rouner,* 333 *Mo.* 1236, 64 *S. W.* 2d 916, 92 *A. L. R.* 1099; *State v. Medley,* 66 *W. Va.* 216, 66 *S. E.* 358.

The purpose of providing a method for selecting persons to serve as jurors, is to insure the presence in court for the benefit of those who may have causes to litigate and for the general administration of justice, jurors who are not arbitrarily chosen, but are drawn impartially from the entire territory over which the court has jurisdiction.

Admitting that the legislature can prescribe the method of selecting jurors, the opinion has been expressed that the Court generally possesses the inherent power to provide itself with a jury as a part of its kindred power to hear and determine matters before it. 31 *Amer. Jur.* p. 601, Sec. 62.

It has been held that the method of selecting persons to serve as jurors has never been regarded as an essential element in the constitutional right of trial by jury. *State v. James,* 96

*N. J. L.* 132, 114 *A.* 553, 16 *A. L. R.* 1141; *People v. Dunn,* 157 *N. Y.* 528, 52 *N. E.* 572, 43 *L. R. A.* 247.

There is no doubt that both of the Jury Commissioners were present on December 10, 1952, when the jury panel was drawn to serve as jurors at the April Term, 1953, of the Superior Court, or that said panel was drawn 15 days before the commencement of said term of court, as provided by the statute.

It is likewise unquestioned, that in drawing the panel the commissioners drew from the box marked "Petit Jurors" the names of 36 persons apportioned as nearly equally as may be among the representative districts of the county. It must be admitted that said jury panel was drawn more than 15 days before the April Term of Court 1953, but the statute places no limit upon the time before each term of court when the commissioners may draw the panel of jurors for that term. It does contain the directory provision that they shall do it 15 days before the commencement of each term of court.

The statute further provides that the jurors drawn are to serve as petit jurors at the ensuing term of court, but again there is no limit to the time when the jurors may be drawn. I understand the word ensue, to mean, to follow or come after. Certainly the April Term of Court 1953, came after the jury panel in question was drawn. If the statute read, to serve at the next ensuing term of court, the situation would be different.

What I have said is not intended as an approval of the manner and time of drawing the jury panel for the April Term of Court 1953, but I cannot find anything about it which was prejudicial to the interest of the plaintiffs in this case.

A review of the proceeding shows a compliance with those provisions of the statute which are mandatory, and a substantial compliance with the provision as to time, which I consider directory.

For these reasons I am convinced that the jury panel should not be quashed and the motion of the plaintiffs to set aside the judgment is denied.

There is another reason for denying the motion of the plaintiffs to set aside the judgment, one which has previously been passed upon in this State and which I consider controlling in this case.

When the case was called for trial the plaintiffs stated they were ready, exercised their right of challenge while the jury was being drawn and expressed themselves as satisfied with the twelve men who were ultimately selected and composed the jury which heard the case. The jury rendered its verdict on May 6, 1953, and plaintiffs' motion was filed on May 19, 1953.

The plaintiffs should have made their objection to the manner in which the jury panel was drawn, before they accepted the jury which was drawn from said panel to try their case. Having accepted the twelve men who were drawn to try their case, they cannot wait until after a verdict against them to raise the question of the validity of the jury panel.

In the case of *State v. Boyle*, 5 *Terry* 414, 61 *A*. 2d 121, 125, the defendant was tried and convicted for having violated the provisions of section 15, chapter 145 of the *Code of* 1935. On a petition to one of the Judges of the Supreme Court, seeking a stay of execution pending the decision of the Supreme Court upon a writ of error, one of the assignments of error relied upon was, that the jury which convicted her was drawn from a list from which women voters of New Castle County had been deliberately excluded. In dealing with this question Judge Terry said, "The question now is, Can the defendant at this late date complain as to the irregularities that occurred in selecting the respective jury panels? I think not." "Insofar as the Petit Jury panel is concerned, from which the defendant's trial jury was drawn, it should suffice to say that a defendant on trial has no right to sit by without objection and allow irregular proceed-

ings to occur and afterwards seek to have a judgment against her set aside because of such irregularity."

This case was tried in the Court of General Sessions, which at that time had the same jurisdiction in criminal cases of that character, that the Superior Court now has.

Plaintiffs contend, and their contention is supported by the affidavit of their counsel, that there was nothing in the records of the Court, or of this case from which they could ascertain the facts surrounding the selection of the jury panel, and that they had no knowledge of said facts until May 18, 1953, which was after the verdict of the jury.

As a matter of fact, the alleged irregularity in selecting the jury panel, was not known until it was brought to the attention of the Court by counsel in another case. Counsel in that case learned of said facts by an examination of the records in the office of the Prothonotary who is the Clerk of the Court.

These records are available to the public and the plaintiffs, or their counsel, had the same opportunity to examine them.

They cannot say that they did not have an opportunity to learn the facts relative to drawing the jury panel.

For the reasons above stated, the plaintiffs' motion to set aside the judgment and grant a new trial is denied.