The DIAMOND STATE TELEPHONE
COMPANY, Appellant,

v.

PUBLIC SERVICE COMMISSION,
Appellee.

Superior Court of Delaware,
New Castle.

Submitted March 19, 1976.

Decided April 9, 1976.

James M. Tunnell, Jr., Richard L. Sutton, Martin P. Tully, of Morris, Nichols, Arsht & Tunnell, Wilmington, for appellant.

William D. Bailey, Jr., David C. McBride, of Bayard, Brill & Handelman, Wilmington, for appellee.

O'HARA, Judge.

The Public Service Commission ("Commission") refused the application of The Diamond State Telephone Company ("Diamond State") for approval of the issuance and sale of 400,000 shares of common stock to its parent corporation, American Telephone and Telegraph Company ("A. T.&T."). Diamond State has appealed this decision raising for review 1) whether the Commission properly exercised its powers of review and approval under 26 Del.C. § 215 [1] and 2) whether the Commission's findings were supported by sufficient substantial evidence or were arbitrary and capricious.

As a public utility, Diamond State is an authorized monopoly. It is required by law to maintain adequate facilities to meet the demand for telephone services in Delaware. Thus, it must continually expand in order to accomodate an ever-increasing population. To finance necessary expansion, Diamond State must raise additional capital as needed, regardless of favorable or unfavorable capital market conditions. Diamond State obtains needed capital from short-term and long-term loans, as well as by the sale of stock and commercial paper. During the past ten years, Diamond State has raised $126 million by the sale of common stock to A.T.&T. ($44 million) and by debt offerings ($82 million). Its current capital structure is comprised of 45.7% debt ("debt ratio") and 54.3% equity ("equity ratio"). The record from below reflects that unless Diamond State sells additional stock, its projected year-end debt ratio will be approximately 50%, as opposed to a 41% debt ratio if the proposed stock issue is allowed.

The policy of Diamond State's Board of Directors ("Board") is to maintain a financially sound capital structure which will preserve the investment of Diamond State's creditors and shareholders, encourage future investments, and assure Diamond State access to the capital markets at all times. In order to forestall the possibility of a credit downgrading which would decrease the accessibility of needed capital, the Board voted to issue $10 million worth of stock to A.T.&T.

Ordinarily the decision of a Board of Directors regarding the fiscal policies of a corporation would be beyond review, absent a showing of fraud. However, a public utility differs from a competitive business and is subject to a greater degree of governmental regulation. *Application of Diamond State Tel. Co.*, Del.Super., 9 Terry 317, 103 A.2d 304 (1954). The Commission is empowered by § 215 to determine whether a stock issue by a utility is consistent with the public interest. Pursuant to that power, the Commission determined that Diamond State's proposed stock issue was a method of capitalization which would be unnecessarily costly to the public. Delaware courts have not yet been called upon to decide directly whether the Commission may oppose actions by the utility which it considers inconsistent with the public interest by substituting its business judgment for that of a utility's Board of Directors. Diamond State contends that

1.  26 Del.C. § 215 reads in pertinent part:
    "(a) No public utility, without having first obtained the approval of the Commission, shall . . . issue any stocks . . . payable in more than 1 year from the date thereof . . . ."

    \*  \*  \*  \*  \*

    (c) The Commission shall approve of any such . . . issue . . . when it finds that the same is to be made in accordance with law, for a proper purpose and is consistent with the public interest. The Commission may make such investigation and hold such hearings in the matter as it deems necessary, and thereafter may grant any application under this section in whole or in part and with such modification and upon such terms and conditions as it deems necessary or appropriate . . . ."

such a substitution by the Commission of its judgment for that of the Board as to the best capitalization method is an action beyond the Commission's statutory power and an error of law.

The scope of review before this Court, as set forth in 26 Del.C. § 510(c), is that the Commission's finding must be upheld if supported by sufficient evidence, free of errors of law and not arbitrary and capricious.

Diamond State submits that Delaware courts have long recognized the exclusive power of a utility's Board of Directors in the area of fiscal policy. Although no authority is cited which deals directly with the Commission's power under § 215, the authorities which are cited do speak in general terms about the power of the Commission to control financial decisions of a utility's management. In *Application of Diamond State Tel. Co.*, supra, Judge Layton wrote:

"[T]he Public Service Commission is vested with broad powers and wide discretion. It is not, however, authorized to invade the province of the Boards of Directors of those utility corporations coming within its jurisdiction. Those matters constituting business judgment are for the Boards . . . to decide, not the Public Service Commission."

Judge Layton was dealing with certain assumptions made by the Commission whereby it attempted to substitute its judgment for that of the Board as to the accounting technique appropriate for establishing a rate base. Judge Layton's opinion was cited with approval in a later rate case, *Application of Diamond State Telephone Company*, Del.Supr., 1 Storey 525, 149 A. 2d 324 (1959). It was stated therein by Chief Justice Southerland:

"In effect the Commission is here attempting to do indirectly that which it could not do directly under its statutory powers—control the fiscal policies of the Company . . ."

In that case, Chief Justice Southerland was presented with a situation in which the Commission had attempted to adjust, for rate-making purposes, the amount of federal income taxes paid by Diamond State. The Commission reasoned that since A.T.&T. had a debt ratio which was higher than that of its subsidiary, in fairness Diamond State should be attributed a debt ratio at least equal to the average debt ratio of all the companies in the Bell System. Otherwise, reasoned the Commission, Diamond State would be paying a higher federal tax than other telephone companies associated with A.T.&T., which would be reflected in higher rates. The result of the Commission's ruling was that an actual expense incurred by Diamond State was disallowed by assuming a tax savings that did not exist. The Supreme Court ruled that the Commission could not "arbitrarily" disallow actual expenses. The Court considered the Commission's action arbitrary since there was nothing in the record to indicate that the parent corporation had committed any wrongdoing or abuse of control.

It is one thing for the Court to restrain the Commission from ignoring the factual reality of existing expenses in determining a rate base and another for the Court to deny to the Commission the supervisory power specifically granted to it by § 215. Although the comments of the Supreme Court in *Diamond State* obviously have bearing on the issue under discussion, they relate to a different context involving different considerations than those present in an analysis of § 215 in the setting here presented.

■ While the Board's discretion in deciding the fiscal policy of the utility may be viewed as exclusive, it is not unlimited. Such freedom is relinquished by a utility in exchange for the benefits inherent in its status as a sanctioned monopoly. The term "abuse of discretion" is perhaps broader in regard to utility regulation. Since the Board of Directors is primarily

concerned with the interests of the stockholders, it must be carefully watched when its actions threaten unnecessary cost to Diamond State's customers. A decision which denied to the Commission any review of the Board's fiscal decisions would pose a threat to the public and would render the provisions of § 215(c) regarding stock issue approval virtually meaningless.

Just as a lack of adequate control over the Board's decisions endangers the public interest, excessive control by the Commission also creates a danger. If Diamond State were seen by financial analysts to exist in a harsh regulatory climate, its now favorable credit rating would be in danger of downgrading. The Commission demonstrated an awareness of the prerogative of the Board in fiscal matters, subject to limitation only in rare instances. It stated at the close of its opinion:

"For each utility subject to our jurisdiction, there is a well known range of appropriate capital ratios. We consider it the prerogative of management to select financing arrangements within those limits. In the rare instance when management seeks to depart from those limits on a permanent basis, it is our duty to intervene if necessary to protect the public from undue capital costs. This is such a rare case."

■ It may seem to be a departure from the attitude expressed by Delaware courts in prior rate making decisions to allow the Commission to question the financial judgment of the utility's management. Nevertheless, a more limited interpretation of § 215(c) would contravene the obvious purpose of that section to grant the Public Service Commission supervisory control over actions by the utility such as the proposed stock issue under consideration. The Court concludes, therefore, that the Commission's decision is not improper as a matter of law.

■ Next must be considered the question of whether the findings of the Commission were supported by sufficient substantial evidence and not arbitrary and capricious. The applicable standard of review is found in 26 Del.C. § 510(c), which reads:

"(c) The scope of review before the Court shall be that the Commission's findings shall be upheld if they are supported by sufficient evidence, free of error of law and not arbitrary or capricious. When factual issues are reviewed the Court shall take due account of the presumption of official regularity and the quasi-legislative function and specialized competence of the Commission."

It should be noted that the language of this section appears for the first time in the 1974 Act. Its predecessor, 26 Del.C. § 192, said nothing about the degree of deference to be given the Commission's decision, although the Court's interpretation of the section required considerable weight to be given to the Commission's findings. See *Application of Diamond State Telephone Company*, supra; *Application of Wilmington Suburban Water Corp.*, Del. Supr., 211 A.2d 602 (1965); *In the Matter of Application of Diamond State Tel. Co*, Del.Supr., 9 Terry 497, 107 A.2d 786 (1954).

Most recently, the Supreme Court ruled in *City of Milford v. Delaware Electric Cooperative, Inc.*, Del.Supr., 344 A.2d 384 1975, that "the proper scope of review of the factual findings of the Public Service Commission is the same as in workmen's compensation cases . . . and that scope of review is the ascertainment of sufficient substantial evidence to support the factual findings . . ."

Here the Commission made a finding that the debt ratio which would result from the proposed stock issue would be substantially less than required to maintain a triple A bond rating. It found further that the revenue cost of the proposed stock issue, in light of the resulting capital structure, would be detrimental to the customers of Diamond State.

The Commission relied upon the analysis of Jacquette, a securities analyst, who prepared testimony for and testified at the hearing in this matter. Jaquette's qualifications as an expert are not questioned. Jaquette concluded that a capital structure with a debt ratio of between 45% and 50% would be sufficient to maintain a triple A bond rating, assuming an adequate rate of return. The proposed stock issue would place Diamond State's debt ratio at approximately 41%.

In support of his conclusions, Jaquette supplied the Commission with an extensive analysis of the financial climate surrounding a large number of recent bond sales by utilities. As explained by him at the hearing, the evidence demonstrated an average debt ratio of the 14 utilities involved which were rated triple A by both Moody's and Standard and Poor's to be 45.4%. The average debt ratio of the three utilities with a triple A rating by Moody's and a double A rating by Standard and Poor's was 52.6%. The evidence further supported the finding by the Commission that capital costs decrease as the debt ratio increases.

Jaquette noted three factors which are considered in computing the revenue cost of capital. These are interest charges, return on equity and taxes on income. An analysis of these factors indicates that, to a point, equity financing is more expensive than debt financing. Diamond State is required by the Constitution to pay a fair rate of return to its investors. Such a return is higher than the return on debt because debt has priority over and is less risky than equity. Furthermore, debt financing is less expensive from a tax standpoint. Since the interest payable on debt is deductible, it takes only one dollar of revenue to pay one dollar of interest. Almost twice as much revenue must be generated to pay one dollar of equity return since equity return is paid out of after-tax income. The disadvantage of debt is that it increases the risk of investment in the utility. By so doing, it increases the risk of downgrading, which adds to the difficulty and expense of obtaining needed capital. Thus, in order to protect the public and the investors, the ideal capitalization structure for a utility such as Diamond State is that which utilizes the maximum amount of debt without triggering a credit rating downgrading.

Diamond State argues that the evidence of its expert, LaBlanc, which contradicts the opinion of Jaquette, should be accepted by this Court. However, this Court's scope of review extends only to the substance and sufficiency of the evidence which supports the Commission's findings. 26 Del.C. § 510(c). As reviewed above, the evidence relied upon by the Commission appears to be competent and comprehensive. Regardless of the conclusion which this Court might have reached if faced with the conflicting evidence presented to the Commission, this Court must not substitute its judgment for that rendered by the Public Service Commission. *In Re Artesian Water Company*, Del.Super., 189 A.2d 435 (1963). This Court ought not reevaluate pertinent evidence which was adduced before the Commission. *In Re Delaware Sports Service*, Del.Super., 196 A.2d 215 (1963); aff'd, Del.Supr., 202 A.2d 568 (1964). This Courts sits as a reviewing court only and not as an administrative agency of superior rank. *In the Matter of Application of Diamond State Tel. Co.*, supra.

The Commission expressed in its opinion a willingness to cooperate with Diamond State's management by respecting the Board's discretion in choosing appropriate capital ratios, provided that such discretion remains within boundaries which are fair and reasonable to the public as well as Diamond State's investors. When, as now, an attempt is made to overstep those boundaries, the Commission is justified in opposing such action.

It was shown at the hearing that the result of a ruling which blocked the proposed

stock issue would be that Diamond State's year-end debt ratio would rise to approximately 50%. If such a ratio is seen by Diamond State's management as dangerously high, they are entitled to propose to the Commission a plan by which that debt ratio would be brought back down to a more reasonable figure acceptable to the Commission.

The Court, for the reasons set forth, concludes that the ruling of the Public Service Commission should be affirmed.

IT IS SO ORDERED.