The DIAMOND STATE TELEPHONE COM-
PANY, Appellant below, Appellant,

v.

PUBLIC SERVICE COMMISSION, Appel-
lee below, Appellee.

Supreme Court of Delaware.

Submitted July 8, 1976.

Decided Oct. 29, 1976.

Rehearing Denied Nov. 15, 1976.

James M. Tunnell, Jr., Richard L. Sutton, and Martin P. Tully of Morris, Nichols, Arsht & Tunnell, Wilmington, for appellant.

William D. Bailey, Jr. and David C. McBride, Wilmington, for appellee.

Before MARVEL, Chancellor, CHRISTIE, Judge, and BROWN, Vice Chancellor.

Diamond State Telephone Company appeals from an order of the Superior Court affirming the order of a majority of the Public Service Commission which had disapproved appellant's application for leave to issue to its parent corporation, American Telephone & Telegraph Company, 400,000 shares of its common stock for a total consideration of $10,000,000, the latter sum being the amount estimated to be needed by appellant at the time of such application not only to retire short term debt but as well to provide funds for needed expansion of its facilities.

Under the provisions of 26 Del. § 215, as under similar earlier legislation, a Delaware public utility must obtain approval of the Public Service Commission in order lawfully to merge, sell or incumber any essential part of its franchises or facilities or to issue shares of stock, notes, or other instruments of debt having a term of more than one year, the section here in issue going on to provide:

"(c) The Commission shall approve of any such proposed merger, mortgage, transfer, issue or assumption when it finds that the same is to be made in accordance with law, for a proper purpose and is consistent with the public interest."

The circumstances leading up to the decision reached by appellant's board of directors to seek approval of the issuance of $10,000,000 of its common stock are as follows. Over the preceding ten years Dia-

mond State had spent $126,000,000 of outside funds toward the construction of $220,000,000 of plant facilities, $82,000,000 of said funds having been derived from debt offerings and $44,000,000 from the sale of common stock. The result of such financing was to increase appellant's debt ratio from 22.8% as of the end of 1965 to 45.7% as of the end of 1975. And, as indicated above, some $10,000,000 of additional moneys have since been deemed to be needed by appellant's board of directors for the purposes above outlined. Hence, its application to the Commission for approval of the issuance of 400,000 shares of common stock to its parent corporation in lieu of borrowing $10,000,000 in a hazardous money market, a transaction inevitably destined to bring about a concomitant increase in appellant's debt ratio.

First of all, we are satisfied and the Commission and the appellant appear to agree that a projected capital deficiency of 442 billion dollars has been forecast by the New York Stock Exchange for the years 1974–1985 and that borrowing now by appellant would accordingly increase its debt ratio. The parties differ, however, as to the exact amount of the increase of debt ratio which would result from further borrowing and whether or not such expected increase would adversely affect appellant's present triple A rating for its debt securities, an event which has recently come to pass in the case of several other operating companies in The Bell System.

In any event, if the Commission exceeded its authority in overruling the business judgment of appellant's board of directors, which had deemed it prudent to issue shares of stock for the purpose of raising $10,000,000 for the retirement of debt and the expansion of its facilities rather than borrowing such funds in the money market, we do not reach a weighing of the facts on the critical issue as to whether or not the borrowing of $10,000,000 would result in a diminution of appellant's present triple A rating for its debt securities, *City of Milford v. Delaware Electric Cooperative, Inc.,* Del.Supr., 344 A.2d 384, 1975.

■ After a hearing, the Commission found that the proposed issuance of common stock to the parent company was ". . . in accordance with law . . . .", was ". . . for a proper purpose . . . ." but that it was not "* * * consistent with the public interest . . . ." because, in the opinion of a majority of the Commission, the issuance of stock as to which dividends presumably could be expected to be paid as opposed to what might be expected to result from the borrowing of moneys on which tax deductible interest would be paid would be more likely to lead to an application for a rate increase in the near future. In reaching such a conclusion the Commission found that the borrowing of $10,000,000 would not affect appellant's triple A debt securities rating, and such a finding should not be disturbed on appeal where there is sufficient substantial evidence to sustain it, *City of Milford v. Delaware Electric Cooperative,* supra.

■ It is, of course, the proper function of the Commission to protect the public from being improperly coerced into paying excessive rates to a legalized monopoly such as appellant for services which it cannot very well do without while at the same time seeing to it that investors in such a utility receive a fair return on their investment, but how far may the Commission go in its proper field of rate control by taking indirect action in such regard such as that taken here?

Turning to the primary question at hand, namely the order of the Commission requiring the appellant to borrow the sum of $10,000,000 rather than issuing stock for

said amount and the propriety of the overturning by the Commission of the contrary judgment of appellant's board of directors and the entrance of an order (affirmed by the Court below) to the effect that it would not be consistent with the public interest for appellant to issue stock in lieu of borrowing the moneys which it needed, it becomes incumbent on this Court to determine whether or not the Commission has acted within the powers legislated to it, or has, in fact, usurped the prerogatives of appellant's board of directors, a majority of which is made up of local businessmen who are not employed by appellant or its parent.

■■ First of all, I have no doubt but that the action of the Commission here complained of stems from a fear in the minds of a majority of the members of the Commission and its advisors that the courts of Delaware will ultimately restrict the Commission's established custom in a rate case of postulating a hypothetical capital structure featuring a fictitious higher than actual debt ratio for the purported purpose of arriving at a fair rate for the consumer, *Application of Wilmington Suburban Water Company*, Del.Supr., 203 A.2d 817 (1964), aff'd, Del.Supr., 211 A. 2d 602 (1965). And while we do not agree that the above case places a limitation on the use of hypothetical capital structures in rate cases just so long as such a hypothetical structure is demonstrably reasonable, we are satisfied that the Commission may not do indirectly what it may not do directly, namely, in the absence of a showing of improper consideration, fraud, bad faith or self dealing on the part of the members of appellant's board of directors in their decision to issue shares of stock for the ostensible purpose of raising needed moneys to substitute its judgment for that of a board of directors for the avowed purpose of forestalling a future potential threat in a rate case of higher rates being imposed on the public as the result of a possible future restriction in the use of hypothetical capital structures. We say this because it has been decided by this Court that the Commission may not seek to control rates indirectly by seeking to control the fiscal policies of a public utility. See *Application of Diamond State Telephone Company*, Del.Supr., 1 Storey 525, 149 A.2d 324 (1959) in which the Commission had sought to disallow a portion of Diamond State's actual tax expense because in its opinion such actual debt, namely 7%, was less than reasonable for the purpose of determining the company's cost of capital, and thus a fair rate of return, and postulated a fictitious debt structure of 35%.

Citing with approval the ruling in *Application of Diamond State Telephone Company*, Del.Supr., 9 Terry 317, 103 A.2d 304 (1954), aff'd Del.Supr., 9 Terry 497, 107 A.2d 786 (1954), the Court stated:

"If it be said that the Company is forced by its management to pay more for its capital than is fair, because the cost of equity capital is greater than the cost of debt capital, the answer is that the Commission has already taken this fact into account in fixing the rate of return. For that purpose it assumed debt capital of 35%.

"The Commission appears to argue that because it is proper in fixing a fair rate of return to use a hypothetical debt ratio, it is also proper to use it to disallow tax expense actually incurred.

"This does not follow. The fixation of a fair return, like the determination of fair value, requires the consideration of a large number of factors, the making of many assumptions, and an overall exercise of judgment. The allowance of legitimate expenses presents no such problem.

"In effect the Commission is here attempting to do indirectly that which it could not do directly under its statutory powers—control the fiscal policies of the Company by penalizing it for adherence to those policies."

■ In our opinion, such ruling is controlling here because we are satisfied that the powers accorded the Commission under the provisions of 26 Del. § 215(c) are not absolute. In other words, in the case at bar the Commission found the proposed stock issuance here to be lawful and for a proper purpose, its unfavorable ruling having been based on the ground that the threat of higher phone rates being authorized in the future as an inevitable concomitant to the issuance of dividend bearing common stock would be inconsistent with the public interest and accordingly justified disapproval of the proposed issue.

■ We are persuaded, however, that the powers so legislated to the Commission were intended to be applied in cases of the proposed issuance of stock for an inadequate consideration or for some other improper purpose and were not intended to serve as a means of forestalling a possible future rate increase for phone use due to possible future dividend requirements. Finally, we consider it significant that in a rate hearing case, in which the internal financial decisions of the board of the public utility having to do with its debt ratio are not directly in issue, that a proposed increase in rates must be shown to be in the public interest and not merely consistent therewith as is required here.

To sum up, we are of the opinion that in this case the Commission has improperly sought to use the legislative powers granted to it by 26 Del.C. § 215(c) not for the purpose of preventing the issuance of corporate stock for an inadequate consideration or for an improper corporate purpose but rather for the purpose of affecting appellant's debt structure in a manner designed to benefit the public interest in a future rate case. This, we believe, the Commission may not do. It follows that the order of the Superior Court affirming the order of the Commission must be reversed.